**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 06-778-PHX-SMM |
| Plaintiff, | **ORDER** |
| vs. | |
| Adan Pineda-Doval, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Suppress Identification Evidence Pursuant to the Fifth Amendment. (Dkt. 51).

## BACKGROUND

On August 7, 2006, at approximately 6:30 a.m., in Yuma, Arizona, Border Patrol Agent Cory Lindsey ("Lindsey") began following a Chevrolet Suburban ("SUV") that he suspected was being used to smuggle illegal aliens. Lindsey signaled for the SUV to pull over, but the driver refused. Border Patrol agents eventually deployed road stop sticks to effectuate the stop. Upon arriving at the sticks, the driver swerved, ultimately causing the SUV to roll over once. Nine adults and one unknown child died as a result of the accident.

On the afternoon of August 7, 2006, Ms. Ana Patricia Rosalas-Rivas, Ms. Veronica Reyes-Bonilla, and Mr. Antonio Perez-Garcia, three of the surviving passengers from the SUV, were interviewed about the events leading up to the fatal accident. Afterwards, each was presented with a photographic lineup that included Defendant. All three passengers identified Defendant as the driver of the SUV.

1  Two days after the accident, Ms. Rosa Amezquita-Razo, another survivor who had
2  been transported to the hospital, was interviewed about the accident and also identified
3  Defendant as the driver of the SUV.

4  Defendant has filed a motion to suppress evidence of the four witnesses'
5  identifications of Defendant as the driver of the SUV, alleging that the identifications were
6  obtained in an impermissibly suggestive manner in violation of the Fifth Amendment.

## STANDARD OF REVIEW

8  A court may suppress out-of-court identification evidence if the evidence was
9  obtained in a manner that was so "impermissibly suggestive as to give rise to a substantial
10 likelihood of misidentification." *Grant v. City of Long Beach*, 315 F.3d 1081, 1086 (9th Cir.
11 2002) (citing *Simmons v. United States*, 390 U.S. 377, 284 (1968)).  Namely, a lineup itself
12 cannot be presented in such a way that would emphasize the suspect.  *Id.*  Further, the general
13 reliability of the identification will be determined by weighing the "totality of the circumstances"
14 surrounding it.  *Atwood v. Schriro*, 489 F. Supp. 2d 982, 1024 (D. Ariz. 2007) (citing *Neil v.
15 Biggers*, 409 U.S. 188 (1972)).  This totality approach analyzes each identification under five
16 factors:

17  1.  The witness's opportunity to view the defendant at the time of the crime;
18  2.  The witness's degree of attention at the time of the crime;
19  3.  The accuracy of the witness's description of the defendant prior to the identification;
20  4.  The witness's level of certainty when identifying defendant; and
21  5.  The length of time that has elapsed between the crime and the identification.

22 *E.g.*, *Neil*, 409 U.S. at 199–200; *Grant*, 315 F.3d at 1087; *United States v. Hanigan*, 681 F.2d 1127,
23 1132 (9th 1982).

## DISCUSSION

25 The question before the Court is whether the procedures giving rise to the
26 identifications made by four of the surviving passengers of the SUV were impermissibly
27 suggestive, such that the Court should suppress the evidence pursuant to Defendant's Fifth

Amendment due process rights. The Court finds that the totality of the circumstances do not indicate that there is a substantial chance of misidentification. Thus, the Court orders that Defendant's motion to suppress the out-of-court identifications be denied.

The Court first finds that the lineup itself was not impermissibly suggestive. Rather, all of the photographs were of similar-looking men. The lineup was created by compiling photographs of persons who share similar physical characteristics with Defendant. Specifically, the six photographs presented in the lineup were of Hispanic men with mustaches who appear to be relatively the same age as Defendant. The Court next turns to analyze each of the five factors in accord with the facts in this case to determine the reliability of the identifications.

### 1. Witness's Opportunity to View the Defendant at the Time of the Crime

Courts have not articulated the exact circumstances necessary to meet the first factor. However, they consider both the lighting conditions and the proximity of the witness to the defendant. *Compare Neil*, 409 U.S. at 199 (finding thirty minutes under artificial light and moonlight was sufficient); *Atwood,* 489 F. Supp. 2d at 1024 (finding a one-minute observation including one point where the defendant looked directly at the witness was sufficient); *United States v. Hanigan*, 681 F.2d at 1133 (finding several hours in the middle of the day was plenty of time to view the defendants), *with Grant*, 315 F.3d at 1087–88 (finding that the witness did not get an accurate view when he only saw the assailant for a few seconds through a window).

Here, the Government's interviews with the four witnesses reveal that the witnesses had ample opportunity to view Defendant both while entering the SUV and while riding in it. Notably, the witnesses were picked up around four in the morning and the vehicle was not stopped until approximately 6:30 a.m. Therefore, the overall conditions provided the witnesses with a sufficient view of Defendant in order to subsequently identify him.

### 2. Witness's Degree of Attention at the Time of the Crime

In regards to the degree of attention, courts have assumed that a witness who realizes a crime is being committed or has any articulable reason for paying attention to the defendant at the time of the crime may fulfill this requirement. *See Hanigan*, 681 F.2d at 1132; *Atwood,* 489 F. Supp. 2d at

1024 (noting that a strange car in a residential neighborhood could easily raise the awareness of the witness). *But see Green v. Loggins*, 614 F.2d 219, 224 (9th Cir. 1980) (finding that the witness was simply a casual bystander to the subject events).

Here, the witnesses were riding in the car for approximately two and a half hours before a Border Patrol agent began to follow the vehicle. Several of the witnesses were able to provide detailed accounts of the actions of the driver. Further, it is likely that their attention to the driver increased once Agent Lindsey began his pursuit of the SUV. Based on the circumstances, the witnesses had adequate opportunity to identify the driver of the SUV.

### 3. Accuracy of Witness's Description Prior to Identification

In viewing the accuracy of the description prior to identification, one does not need to be entirely specific, as long as it is not directly inaccurate.

Only Ms. Amezquita-Razo provided a description of what the driver was wearing. However, each of the witnesses provided a fairly-detailed description of the events leading up to the pursuit. These accounts included the actions and comments of the driver while the passengers were being loaded in the SUV. All of the witnesses' versions of the events that transpired leading up to the accident were also very similar and support the validity of the identifications. *Cf. Grant*, 315 F.3d at 1088 (noting that the individual victims' descriptions of the assailant were inconsistent with each other, which decreased the finding of probable cause).

### 4. Level of Certainty When Identifying Defendant

The level of certainty in identifying the suspect sometimes blurs with the third factor. Nonetheless, courts will look at whether the witness was tentative in his identification and whether he first identified someone other than the defendant. *Compare Hanigan*, 681 F.2d at 1133 (holding that the confident victims satisfied this factor), *with Grant*, 315 F.3d at 1088 (holding that the witness who first identified someone else did not satisfy this factor).

Here, all of the identifications were made readily and with certainty. After the identification of Defendant, all of the witnesses indicated that Defendant was the driver without prompting by the agents.

### 5. Length of Time Between Crime and Identification

Again, the courts have varied in regards to how much of a lapse in time between the crime and identification is reasonable. Anywhere from a day to under two months has been considered acceptable, see *Atwood* and *Hanigan*, respectively, whereas over three months has not, see *Grant*.

Here, three of the four identifications were made the day of the accident. The fourth identification was made two days after the accident. This factor clearly weighs in favor of allowing the evidence.

Based on an analysis of the lineup, along with the five factors that indicate the reliability of the identifications, the Court finds that there was not a substantial risk of misidentification. Thus. there was no Fifth Amendment violation and the evidence of the out-of-court identifications shall be allowed at trial.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Identification Evidence Pursuant to the Fifth Amendment is **DENIED**.

DATED this 24th day of September, 2007.

_____
Stephen M. McNamee
United States District Judge

- 5 -