IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America | ) | CR-06-00778-PHX-SMM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| ADAN PINEDA-DOVAL, | ) | |
| Defendant. | ) | |

Pending before the Court is a Motion in Limine filed by the United States (Government) to preclude Adan Pineda-Doval (Defendant) from offering evidence relating to whether the Border Patrol agents complied with United States Customs and Border Protection ("CBP") policy when deploying the tire spikes. After reviewing the parties' memoranda and after listening to oral arguments, the Court enters the following order.

**BACKGROUND**

On August 7, 2006 Border Patrol agents from the El Centro Station were operating a checkpoint on U.S. Highway 95 near the vicinity of Yuma, Arizona. An agent patrolling within the vicinity of Yuma saw a white Chevrolet Suburban traveling northbound on Red Cloud Mine Road. Border Patrol Agent Corey Lindsay followed the vehicle without activating his emergency lights. As the Suburban traveled, Agent Lindsay noticed a large number of occupants, consistent with an alien smuggling load, within the back of the vehicle. Agent Lindsay activated his emergency lights and siren while following

the Suburban as it traveled eastbound on Martinez Lake Road and Ocotillo road.  The driver of the Suburban refused to yield.

As the Suburban neared Ocotillo Road, another agent placed tire spikes[1], also known as spike strips, on the road ahead of it.  The Suburban, traveling at an approximate speed of 45-50 miles per hour, swerved in an attempt to evade the tire spikes, causing the vehicle to roll.  The Suburban rolled at least two times, ejecting numerous passengers.  Agents found 21 illegal aliens, including the Defendant at the crash site. Five of the aliens at the scene were dead, and five more died at or en route to hospitals.  Several other passengers from the Suburban were seriously injured and evacuated by air to hospitals in Phoenix and Yuma, Arizona.  The Government filed this Motion in Limine to preclude the Defendant from offering evidence relating to whether Border Patrol agents complied with CBP policy when agents deployed tire spikes on August 7, 2006.

**STANDARD OF REVIEW**

A district court is vested with discretion as to whether to hear a motion to exclude evidence before a trial in an *in limine* proceeding.  *United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985).  In an *in limine* proceeding, the district court has the power to preclude the introduction of evidence in support of a claimed defense, where the defense does not exist as a matter of law.  *See United States v. Bailey*, 444 U.S. 394, 415 (1980).

Rule 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

**DISCUSSION**

The Government filed this motion *in limine* in anticipation that the Defendant may attempt to argue that the conduct of Border Patrol agents in deploying tire spikes caused the rollover collision in this case.  Specifically, the Government anticipates the Defendant may claim that the deployment of the tire spikes violated CBP's policy regarding its deployment.  This Court finds that whether or not

---

[1] The tire spike device are occasionally referred to as a Controlled Tire Deflation Device, because the "spikes" are hollow metal tubes that let the air out of the tire in a controlled fashion without causing it to explode.

1 agents complied with CBP's policy in the deployment of tire spikes is not relevant in this case. The
2 Court also finds that even if the evidence were relevant, Rule 403 would preclude its admittance
3 because of the likelihood of jury confusion and prejudice. Therefore the Defendant is precluded from
4 offering evidence or argument in an attempt to demonstrate that Border Patrol agents did not comply
5 with CBP's policy on the deployment of tire spikes.

6 The Defendant is charged with alien smuggling in violation of 8 U.S.C. section
7 1324(a)(1)(A)(ii). The Government must prove four elements beyond a reasonable doubt to prove
8 that Defendant is guilty under § 1324(a)(1)(A)(ii). The Government has to prove that 1) the persons
9 named as aliens in the indictment were in fact aliens; 2) those persons were not lawfully in the
10 United States; 3) the Defendant knew or was in reckless disregard of the fact that those individuals
11 were not lawfully in the United States; and 4) the Defendant knowingly transported the aliens in
12 order to help them remain in the United States illegally. Manual of Model Jury Instructions for the
13 Ninth Circuit 9.2 (2007). Additionally, the Government must prove beyond a reasonable doubt to
14 the jury that the violation of § 1324(a)(1)(A)(ii), resulted in the deaths of the individuals named in
15 the indictment to trigger the penalty enhancement set forth in § 1324(a)(1)(B)(iv). *See Apprendi v.*
16 *New Jersey*, 530 U.S. 466 (2000).

17 The sentence enhancement set forth in § 1324(a)(1)(B)(iv), incorporates a causation
18 requirement which provides notice that increased penalties may apply for defendants who allow
19 those they are smuggling to be exposed to life-threatening conditions during the course of
20 smuggling aliens based on the term "resulting". *United States v. Matus-Leva*, 311 F.3d 1214, 1219
21 (9th Cir. 2002). According to *Matus-Leva*, the court explained that

> the use of the word "resulting" means that there is an increased penalty only
> if a death occurred in the course of smuggling and was related to the
> smuggling. The term "resulting" incorporates a causation requiremnt and thus
> puts persons of ordinary intelligence on notice that increased penalies may
> apply if they allow those they are smuggling to be exposed to life-threatening
> conditions during the smuggling process.

*Matus-Leva*, 311 F.3d at 1219.

The causation requirement described in *Matus-Leva* is different than a standard of care
requirement. CBP's policy on the use of tire spikes will likely only show whether or not the proper

- 3 -

1  standard of care was used by the agent or agents who deployed the tire spikes. Because the
2  language of § 1324(a)(1)(B)(iv) incorporates a causation requirement where the defendant's
3  conduct does not need to be the immediate cause of the deaths, the issue of whether agents
4  complied with the CBP tire spike policy is not material to the issue of whether the penalty
5  enhancement applies to the defendant's conduct. Moreover, the United States Supreme Court has
6  noted that "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a
7  relation between an item of evidence and a matter properly provable in the case." *Huddleston v.*
8  *United States*, 485 U.S. 681, 689 (1988) (citing Advisory Committee Notes on Fed. R. Evid. 401).
9  Therefore the issue of whether the agents complied with the CBP tire spike policy is unrelated to
10 the issue of causation and is deemed not relevant.

11 Even assuming that the CBP's policy on tire spikes is relevant, Rule 403 would preclude the
12 policy from evidence because of its low probative value compared to the danger of unfair prejudice
13 that would likely result. *See* Fed. R. Evid. 403. Relevant evidence may be excluded under Rule
14 403 only if its probative value is substantially outweighed by one or more of the articulated dangers
15 or considerations. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

16 The introduction of CBP's policy on tire spikes as evidence would cause jury confusion and
17 would create a trial within a trial to determine whether the agents complied with the tire spike
18 policy. *See generally Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000) (in a § 1983
19 action the court excluded evidence due in part because it required a "full-blown trial within this
20 trial"). This is especially true in light of the fact that individuals do not acquire any rights in
21 internal governmental policies. *See United States v. Montoya*, 45 F.3d 1286, 1295 (9th Cir. 1995)
22 (internal department guidelines do not create any rights inhering to criminal defendants); *United*
23 *States v. Lorenzo*, 995 F.2d 1448, 1453 (9th Cir. 1993); *United States v. Busher*, 817 F.2d 1409,
24 1411 (9th Cir. 1987). *Cf. United States v. Haswood*, 350 F.3d 1024, 1028 (9th Cir. 2003) (FBI
25 Agent's failure to follow policy did not necessarily create a constitutional violation). Therefore,
26 even if CBP's policy on tire spikes is relevant, the prejudicial effect will substantially outweigh its
27 probative value and is thus precluded under Rule 403.

28

1  This Court finds that CBP's policy on tire spikes and any evidence purporting to demonstrate
2 a breach of that policy is not relevant and is therefore excluded under Federal Rules of Evidence 401
3 and 402.  Even if the evidence is found relevant, it is precluded under Federal Rules of Evidence
4 403.

## CONCLUSION

**IT IS ORDERED** that the Government's Motion in Limine (Doc. No. 85) is hereby **GRANTED**.

DATED this 15th day of October, 2007.

_____
Stephen M. McNamee
United States District Judge